[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 3, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-11007
Non-Argument Calendar

_____

D. C. Docket No. 05-01119-CV-JOF-1

SULE BEST, in his individual
capacity and as the administrator
of the estate of Sonja Angela
Todman and the father of Nia
Best,
DEXTER TERRENCE TODMAN,
MARCIA TATE,
NIA BEST, by and through her
mother and next friend Latesha
White, her parents and guardians,

Plaintiffs-Appellants,

versus

COBB COUNTY, GEORGIA,
LEE NEW, individually and in
his official capacity as Chief
of Police for Cobb County,
Georgia,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Georgia

**(July 3, 2007)**

Before DUBINA, CARNES and WILSON, Circuit Judges.

PER CURIAM:

Plaintiffs, Sule Best, Dexter Todman, Marcia Tate, and Nia Best, appeal the district court's grant of the defendants' motion for summary judgment. After a fatal car crash involving a vehicle pursued by Cobb County Police, the plaintiffs sued Cobb County and former Cobb County Police Chief Lee New pursuant to 42 U.S.C. § 1983. The plaintiffs allege that the defendants violated their rights under the substantive due process clause of the Fourteenth Amendment and their right to interstate travel by failing to train Cobb County Police Department officers on proper police pursuit procedures. The district court held that, because no Cobb County officer actually violated the plaintiffs' constitutional rights, neither the county nor the police chief could be held liable under § 1983. In the alternative, the district court concluded that, even if municipal liability were possible, the plaintiffs proffered no evidence to show that the allegedly deliberately indifferent manner in which Cobb County or Chief New trained the officers was the "moving

force" or "direct causal link" to the injuries the plaintiffs suffered. For the reasons set for in the district court's well-reasoned order and those we discuss in this opinion, we affirm.

## BACKGROUND

On April 27, 2003, Sonya Todman, Marcia Tate, and Nia Best were traveling by car when a vehicle fleeing from Cobb County authorities crossed the center line and struck them head-on. Sonya Todman died in the accident, and Marcia Tate and Nia Best suffered severe, permanent injuries.

Immediately before the collision, Cobb County Officer C.K. Smith had pulled over the suspect's vehicle because the license plate was not properly affixed.[1] As Officer Smith began to approach the vehicle on foot, the car sped off. Officer Smith initiated a pursuit, which lasted approximately 30 seconds and covered a distance of less than a mile. The chase occurred on a Sunday at 5:28 p.m. on a four-lane highway with light to moderate traffic. The suspect's car wove in and out of traffic and reached speeds of approximately 80 miles per hour. Eventually, the suspect's vehicle crossed into the lane of oncoming traffic and crashed into the plaintiffs.

---

[1] The license plate was hanging down and about to fall off. No one disputes that Officer Smith had probable cause to pull over the vehicle for a violation of state law. The officer also suspected that the car might be stolen because he saw that there was a metal plate riveted over the trunk lock.

3

The plaintiffs presented expert testimony regarding police pursuits in Cobb County. Their expert testified that 87.5% of all pursuits in Cobb County involve misdemeanor offenses or traffic violations. Out of more than 650 pursuits initiated, officers terminated only 11 during the course of the pursuit. The expert also testified that Cobb County officers are not required to balance the need to apprehend a suspect against the public's safety, and no action is taken against them for policy violations during pursuits. Of the 650 pursuits reviewed, 380 (58%) resulted in accidents, including 93 (14%) with injuries and at least 4 fatalities.

In 2001, a Cobb County grand jury recommended that the county revise its vehicle pursuit policy to make the safety of the public and police officers a top priority. The grand jury noted that if the suspect's identity is readily ascertainable through a license tag or other means and the suspect is not a dangerous felon, police should discontinue the pursuit. The grand jury also recommended that the county use helicopters to aid in vehicle pursuits. Cobb County did not implement any of the grand jury's specific recommendations.

The preamble to the county's vehicle pursuit policy provides:

The Department recognizes that it is the duty and responsibility of an officer to apprehend a violator. Criminals often attempt to flee to escape apprehension for their crime. The exact crime for which the violator is fleeing from, may or may not be known to the pursuing officer. The policy of the Department is to use all reasonable means to apprehend a fleeing violator. The primary consideration during a

4

vehicle pursuit will be that of safety, both the officer and the community.

The plaintiffs assert that Cobb County has a "pursue at all costs" policy. They further assert that, while the county may teach pursuit maneuvers, it does not properly train officers on when to initiate and when to call off a pursuit or give corrective instruction when accidents occur. In sum, the plaintiffs contend that Cobb County was deliberately indifferent in training its officers because its policy does not require officers to limit pursuits to situations where the need to apprehend the suspect justifies the grave risk to innocent motorists and pedestrians.

## STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo* and apply the same standards as the district court. *Burton v. Tampa Housing Authority*, 271 F.3d 1274, 1276 (11th Cir. 2001). "We view all evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party." *Id*. at 1277. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

DISCUSSION

This case is unique because the plaintiffs did not name the police officer involved in the pursuit as a defendant, nor do they claim that he personally violated their constitutional rights. Instead, the plaintiffs focus on the county's vehicle pursuit policy, arguing that the defendants were deliberately indifferent to their constitutional rights, and therefore the county is responsible for their injuries.

We have stated that "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). Thus, in order to hold Cobb County liable for the plaintiffs' injuries, the plaintiffs must establish a constitutional violation, municipal culpability, and causation. If the plaintiffs are unable to prove any of the three, their challenge necessarily fails.

The plaintiffs rightfully concede that under the facts of this case Officer Smith did not violate their Fourth Amendment or Fourteenth Amendment rights. *See County of Sacramento v. Lewis*, 523 U.S. 833, 844, 854, 118 S. Ct. 1708, 1715, 1720, 140 L. Ed. 2d 1043 (1998). Although the police pursuit ended tragically,

there was no constitutional violation. Consequently, the plaintiffs' claim against the county cannot survive summary judgment. *See Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."); *Vineyard v. County of Murray*, 990 F.2d 1207, 1211 (11th Cir. 1993) (per curiam) ("Only when it is clear that a violation of specific rights has occurred can the question of § 1983 municipal liability for the injury arise."); *see also Collins v. City of Harker Heights*, 503 U.S. 115, 119, 112 S. Ct. 1061, 1065, 117 L. Ed. 2d 261 (1992) ("Although [§ 1983] provides the citizen with an effective remedy against those abuses of state power that violate federal law, it does not provide a remedy for abuses that do not violate federal law."); *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573, 89 L. Ed. 2d 806 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.").

In *Rooney*, we specifically stated that the plaintiffs' "failure to train" claim could not exist independent of an underlying constitutional violation. 101 F.3d at 1381 n.2 ("The Rooneys also allege that Volusia County's failure to train officers for high speed vehicle operation leads to a cognizable cause of action under section

7

1983.  The Rooneys cannot maintain this cause of action, however, because the automobile accident did not rise to a level of violating their constitutional rights.").  Many of our sister circuits have reached the same conclusion.  *See, e.g.*, *Trigalet v. City of Tulsa*, 239 F.3d 1150 (10th Cir. 2001); *Scott v. Clay County*, 205 F.3d 867 (6th Cir. 2000); *S.P. v. City of Takoma Park*, 134 F.3d 260 (4th Cir. 1998); *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586 (7th Cir. 1997); *Brodnicki v. City of Omaha*, 75 F.3d 1261 (8th Cir. 1996); *Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994).  *But see Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3d Cir. 1994) (holding that "in a substantive due process case arising out of a police pursuit, an underlying constitutional tort can still exist even if no individual police officer violated the Constitution").

Notwithstanding the need for an underlying constitutional violation, this case presents additional problems of causation.  The plaintiffs "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997).  Even if the county was deliberately indifferent to the life and liberty of citizens like the plaintiffs through its vehicle pursuit policy, it cannot be said that the county's policy or allegedly inadequate training was the "moving force" behind the plaintiffs' injuries.  *See id.*

8

Considering Officer Smith only initiated pursuit after the suspect had sped away from the scene of the traffic stop, it is clear that the suspect who crashed into the plaintiffs decided, on his own, to try and evade the police by means of severely reckless driving. Even if Officer Smith, in an abundance of caution, decided not to pursue the suspect, it is hard to say that the suspect would not have crossed the double yellow line into oncoming traffic in an attempt to pass slower-moving vehicles. Because the whole incident only lasted 30-35 seconds, we find it difficult to see how a different vehicle pursuit policy or better officer training would have avoided the collision. In sum, the plaintiffs have not shown "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation," and thus cannot establish liability on the part of the county or its police chief. *See City of Canton*, 489 U.S. at 385, 109 S. Ct. at 1203.

## CONCLUSION

Because the plaintiffs cannot establish a predicate constitutional violation or demonstrate that the county's policy was the proximate cause of their injuries, their § 1983 claim against Cobb County and Chief New necessarily fails. Accordingly, we affirm the district court's grant of summary judgment to the defendants.

**AFFIRMED.**