[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-11075
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 18, 2011
JOHN LEY
CLERK

D.C. Docket No. 2:08-cv-00114-HGD


JOHN WOODRUFF,

Plaintiff - Appellant,

versus

TRUSSVILLE, CITY OF,
DON SIVLEY,
ERIC ADAMS,

Defendants - Appellees.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(July 18, 2011)

Before TJOFLAT, EDMONDSON and WILSON, Circuit Judges.

PER CURIAM:

John Woodruff, proceeding pro se, appeals the grant of summary judgment in favor of defendants on Woodruff's 42 U.S.C. § 1983 lawsuit. No reversible error has been shown; we affirm.

Woodruff raised claims of unlawful arrest, excessive force, and malicious prosecution in violation of the Fourth Amendment against the City of Trussville, Alabama and two police officers.[1] He based his allegations on events stemming from a traffic stop. Woodruff alleged that Don Sivley, Chief of Police for the City, pursued him on the interstate in an unmarked sport utility vehicle. Woodruff tried to distance himself from the SUV by passing many cars. When Woodruff exited the interstate, Officer Eric Adams (who had been contacted by Sivley about Woodruff's driving) attempted to pull Woodruff over. Woodruff eventually stopped in the parking lot of a movie theater, where he was going to meet a friend. He alleged that Adams punched him in the face, pulled him from his car, threw him to the pavement, causing him to strike his head, and handcuffed him without telling him the nature of the charges for which he was under arrest.

The officers charged Woodruff with many traffic violations, including

_____

[1]Woodruff also raised claims under state law. But on appeal, he abandons those claims.

2

reckless driving, and with driving under the influence (DUI). Because of the DUI charge, Woodruff was jailed for 22 hours in the municipal jail. He also submitted to a blood test, which revealed no alcohol or drugs in his blood. The DUI charge was dismissed; and after trial in municipal court and a later appeal in county circuit court, Woodruff was cleared of all the other charges.

The district court, through the magistrate judge,[2] concluded that the officers were entitled to qualified immunity on the unlawful arrest and malicious prosecution claims because the facts demonstrated that the officers had arguable probable cause to arrest Woodruff for reckless driving. The court also concluded that Adams was entitled to summary judgment on the excessive force claim because, even construing the facts in the light most favorable to Woodruff, Adams used, at most, minimal force. Because Woodruff had not shown a constitutional violation, the court concluded that the City could not be liable.

On appeal, Woodruff argues that the officers lacked probable cause to arrest him for DUI and, thus, they were unentitled to qualified immunity. We review a district court's grant of summary judgment de novo; and we view the evidence and all reasonable factual inferences in the light most favorable to the nonmoving

---

[2]The parties consented in writing to proceed before a magistrate judge.

3

party.  Skop v. City of Atlanta, 485 F.3d 1130, 1136 (11th Cir. 2007).[3]

To show entitlement to qualified immunity, "the defendant government official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir. 1994) (internal quotations omitted).  Discretionary authority includes all acts of a governmental official that were (1) undertaken pursuant to the performance of his duties and (2) within the scope of his authority.  Id. at 1566.  Here, making traffic stops and arrests clearly fell within the scope of Sivley's and Adams's authority as police officers.  The burden then shifts to the plaintiff to show that (1) the facts, as alleged and viewed in the light most favorable to the plaintiff, establish a constitutional violation and (2) the constitutional right violated clearly was established.  Id. at 1565.

"A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim."  Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996).  But even if an officer lacked actual probable cause to arrest a person, he still can be entitled to qualified immunity if he had arguable probable cause: "that is, whether reasonable officers in the same

---

[3]In addition, we construe liberally pro se pleadings.  Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

circumstances and possessing the same knowledge as the Defendant[] *could have believed* that probable cause existed to arrest." Skop, 485 F.3d at 1137 (citation and internal quotation omitted) (emphasis in original). To determine whether arguable probable cause exists, courts must look at the totality of the circumstances. Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

Here, the undisputed facts show that (1) in Sivley's presence, Woodruff sped, tailgated other drivers, flashed his headlights at them to get them to move, and did not use his signal every time he passed other cars, all in an effort to distance himself from the SUV he thought was following him; (2) after Woodruff exited the interstate, Adams observed Woodruff operate his vehicle in violation of traffic laws, including making improper lane changes; and (3) Woodruff failed to pull over immediately when Adams turned on the lights of his police car and, instead, pulled around another car in front of him that had stopped. Reasonable officers with this knowledge could have believed that Woodruff drove recklessly; so Sivley and Adams had arguable probable cause to arrest Woodruff for reckless driving. See Ala. Code § 32-5A-190(a); Wood v. Kesler, 323 F.3d 872, 879 (11th Cir. 2003) (explaining that a person may be guilty of reckless driving by "driving negligently and at a speed or in a manner likely to endanger any person or property").

Woodruff focuses his arguments on the DUI charge, maintaining that the officers fabricated this charge to cover up their unconstitutional acts. But an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Devenpeck v. Alford, 125 S.Ct. 588, 594 (2004). That Sivley and Adams had arguable probable cause to arrest Woodruff for any offense entitled them to qualified immunity. Durruthy v. Pastor, 351 F.3d 1080, 1090 n.6 (11th Cir. 2003). And while Woodruff argues that the district court erred in not considering the officers' intent in granting summary judgment, the qualified immunity analysis focuses on the government official's "objective reasonableness, regardless of his underlying intent or motivation." Rushing v. Parker, 599 F.3d 1263, 1266 (11th Cir. 2010).[4]

We also conclude that the district court concluded correctly that Adams did not use excessive force in arresting Woodruff. "[T]he application of de minimis force, without more, will not support" an excessive force claim and will not defeat an officer's qualified immunity. Nolin v. Isbell, 207 F.3d 1253, 1257-58 (11th

---

[4]Woodruff complains that the district court improperly used the Ritalin pills that Adams discovered in Woodruff's car as a justification for probable cause for the DUI charge and that the court failed to consider the affidavit of Christy Wilkins (who was waiting for Woodruff in the theater parking lot when the events took place) that conflicted with the officers' account of events about what occurred in the parking lot. But these issues do not bear on the district court's determination that the officers had arguable probable cause to arrest Woodruff for reckless driving based on conduct that occurred before the discovery of the Ritalin and the confrontation in the parking lot.

Cir. 2000). The kind of force alleged by Woodruff -- including Adams punching Woodruff in the face, forcefully removing him from his car, and slamming him on the ground -- even when construed in the light most favorable to Woodruff, constituted only de minimis force.  Id. at 1258 (concluding that only de minimis force was used when officer grabbed the plaintiff, shoved him a few feet against a vehicle, pushed his knee into plaintiff's back, pushed plaintiff's head against the van, searched plaintiff's groin area in an uncomfortable manner, and placed plaintiff in handcuffs, all resulting in only minor bruising).

Woodruff characterizes his arrest and later criminal proceedings as a "continuing seizure" amounting to malicious prosecution because he had to make court appearances and was prevented from leaving the state.  But, as the district court noted, Woodruff's arrest was supported by arguable probable cause; and a "plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occur[s] prior to the time of arraignment." Kingsland v. City of Miami, 382 F.3d 1220, 12335 (11th Cir. 2004).  Moreover, the normal conditions of pretrial release do not constitute a "continuing seizure" unless there is some "significant, ongoing deprivation of liberty, such as a restriction on the [plaintiff's] right to travel interstate." Id. at 1236.  Woodruff says that he could not leave the state because of the conditions of his pretrial release; but this statement plainly is belied by the

record.  The City's mandatory conditions of release stated that Woodruff could not leave the state without the court's permission.  And Woodruff concedes that he never asked the court for permission to leave the state.

We conclude that no constitutional violation occurred; and Sivley and Adams were entitled to qualified immunity in their individual capacities.  Because Sivley and Adams committed no constitutional violation, Woodruff cannot show a basis on which to establish municipal liability against the City.  See Rooney v. Watson, 101 F.3d 1378, 1381 n.3 (11th Cir. 1996).

AFFIRMED.